Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8572 | DATE | May 27, 2003 |
| CASE TITLE | WTL Rail corp.  v  Transport International Pool, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9)
(10) ■ [Other docket entry]  Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment pursuant to Fed.R.56(c) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 2 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WTL RAIL CORPORATION, a Delaware corp., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRANSPORT INTERNATIONAL POOL, INC., ) <br> a Pennsylvania corporation, ) <br> ) <br> Defendant. ) | No. 02 C 8572 <br><br> Judge Robert W. Gettleman |

DOCKETED
MAY 29 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff WTL Rail Corporation ("WTL") initially filed the instant lawsuit in state court seeking damages, specific performance and declaratory relief arising from its trailer lease agreement with defendant Transport International Pool, Inc. ("TIP"). Defendant subsequently removed the instant lawsuit to this court and moved to dismiss it under Fed. R. Civ. P. 12(b)(6). Because defendant's motion to dismiss relied on a document that the court determined was outside the four corners of the complaint, the court converted defendant's motion to one for summary judgment under Fed. R. Civ. P. 56(c). For the reasons stated herein, defendant's motion for summary judgment is granted.

# FACTS[1]

In 1996, plaintiff entered into a lease agreement (the "Lease Agreement")[2] with Wabash National Finance Corporation ("Wabash") to lease several groups of piggyback trailers that were identified on separate schedules, labeled A through S, attached to the Lease Agreement. The Lease Agreement was, and at all times has been, negotiated, interpreted and implemented by Wabash and plaintiff as a finance lease through which Wabash financed plaintiff's acquisition of the scheduled piggyback trailers. To this end, the monthly lease payments negotiated by Wabash and plaintiff were premised upon implicit rates of interest on the principal debts necessary to finance the acquisitions.

The Lease Agreement makes no reference to any right of plaintiff to purchase the trailers in advance of the full term of the lease schedules - i.e., to prepay the principal, interest and other charges under the Lease Agreement. To the contrary, the Lease Agreement requires specified monthly rental payments for each unit listed on the schedules. Nonetheless, according to plaintiff's complaint, plaintiff and Wabash "at all times interpreted and understood the Lease Agreement to give [plaintiff] the right to purchase the trailers prior to the full terms scheduled for those trailers." Indeed, on five separate occasions, plaintiff purchased certain groups of trailers before their scheduled lease termination dates pursuant to the following terms: (a) the purchase price was equal to the present value of all remaining rental payments for the full lease term, plus

---

[1]On January 28, 2003, counsel for defendant stipulated in open court that, for the purposes of the instant motion only, defendant would admit all factual allegations in plaintiff's complaint. Accordingly, unless otherwise indicated, this factual summary is drawn from plaintiff's complaint and exhibits attached thereto.

[2]The Lease Agreement provides that all rights and obligations thereunder shall be governed by Indiana law.

2

the present value of the scheduled "Estimated Residual Value" for each trailer; and (b) the discount rate used in determining these present values was the implicit interest rate utilized in calculating the scheduled monthly lease payments.

According to plaintiff, "At no time did [plaintiff] or Wabash interpret or understand the Lease Agreement as entitling Wabash, the lessor, to demand or receive a prepayment fee or penalty. At no time in the course of any of the transactions... did Wabash, the lessor, ask for or demand, and at no time did [plaintiff] pay, a prepayment fee or penalty."

Section 20 of the Lease Agreement gives the lessor the right to assign its interests under the Lease Agreement to a third party, "subject to Lessee's rights under [the Lease Agreement]." Section 20 further provides that "Lessee shall execute any documents required by the assignee or other transferee of Wabash's interest, in order to effectuate the same."

On or about February 28, 2001, Wabash assigned its rights under the Lease Agreement for schedules K through S to defendant. Wabash remained lessor with respect to Schedules A, B, C, E and J, however, and subsequently allowed plaintiff to prepay some of these schedules, pursuant to the terms described above. According to plaintiff's complaint, "At the time it executed the assignment, defendant knew (or as a result of its due diligence investigation prior to the Assignment, should have known)" about plaintiff's and Wabash's understanding regarding prepayment of the leases without penalty.

Prior to Wabash's assignment of its interests under the Lease Agreement to defendant, plaintiff signed a "Notice and Acknowledgment of Assignment" (the "Acknowledgment"). According to the Acknowledgment,

> In recognition of Assignee's [defendant's] reliance upon this Notice and
> Acknowledgment of Assignment, Lessee [plaintiff] certifies, confirms and agrees as
> follows:
>
> 1. The Lease and the Designated Schedule... constitute the legal, valid and binding
>    obligation of Lessee....
> 2. There are no modifications, amendments or supplements to the Lease which relate
>    to the Designated Schedule; and any future modification, termination, amendment
>    or supplement to the Lease which relates to the Designated Schedule, or
>    settlement of amounts due thereunder which relates to the Designated Schedule,
>    shall be ineffective without Assignee's prior written consent.

The Acknowledgment was not referenced in plaintiff's complaint, but rather was submitted by defendant in support of the instant motion.

In October 2001, plaintiff informed defendant of its intention to purchase all of the trailers listed in Schedules K through S "in accordance with, and on the same terms as, all of its other pre-term acquisitions from the lessor, Wabash." Defendant refused to: (1) acknowledge plaintiff's right to purchase the trailers; (2) allow plaintiff to purchase the trailers on the same terms as plaintiff's other pre-term purchases; and (3) allow any pre-term purchase by plaintiff without the payment of an additional fee or penalty of $100,000 or more. Plaintiff subsequently filed the instant suit seeking a declaratory judgment that it is entitled to purchase the trailers prior to the end of their scheduled lease terms without incurring a prepayment penalty, as well as specific performance and damages for breach of contract and tortious interference with prospective advantage. In response, defendant maintains that, even assuming the truth of the allegations of plaintiff's complaint, the Acknowledgment is essentially an estoppel letter that trumps the plaintiff's and Wabash's course of performance, entitling defendant to summary judgment. With this background in mind, the court turns to the legal standards governing the instant motion.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The operative facts of the instant case are not in dispute. The parties agree that: (1) on its face, the Lease Agreement is silent regarding plaintiff's right to prepay without a penalty; (2) Wabash, on at least five occasions, permitted plaintiff to prepay without penalties; (3) Wabash and plaintiff performed the Lease Agreement in accordance with their understanding that plaintiff had the right to prepay without penalty or premium, and defendant knew or should have known this fact at the time it executed the assignment; and (4) plaintiff signed the Acknowledgment, which provided that there had been "no modifications, amendments or supplements" to the Lease Agreement. Rather, the parties' dispute hinges on whether Wabash's acceptance of plaintiff's

5

prepayment without penalty was a permissible interpretation of the original Lease Agreement, or constituted a modification or supplement to that Agreement.

According to defendant, plaintiff's allegations regarding the parties' course of performance and/or understanding are a supplement to the original Lease Agreement which are rendered "irrelevant" by plaintiff's execution of the Acknowledgment:

> In short, WTL can plead and argue all it wants that the written terms of the Lease Agreement were supplemented by some unwritten "[interpret]atation" or "underst[anding]" between WTL and Wabash, whether that be by course of dealing, course of performance, or whatever legal doctrine WLT recites. Such arguments and allegations, however, are rendered entirely irrelevant in light of WTL's explicit admission that it executed the Acknowledgment and the uncontested fact that the Acknowledgment contains WTL's express representation that there exist "no... supplements" to the written terms of the Lease Agreement. Indeed, such supplementation is precisely what course of dealing and course of performance do. (Emphasis in original.)

Plaintiff maintains, however, that the parties' interpretation of the contract as including a right to prepay without a penalty does not constitute a modification or supplement to the contract; rather, according to plaintiff, the contract has always been interpreted to include a right of prepayment without penalty. Moreover, plaintiff argues that, even if the court concluded otherwise, the Acknowledgment is not binding on plaintiff for a variety of reasons, including a lack of consideration. For the reasons that follow, the court concludes that the right to prepay, with or without penalty, constitutes a modification or, at the very least, a supplement, to the original Lease Agreement, and that the Acknowledgment is indeed valid.

The court begins its analysis with the Lease Agreement as written. Under Indiana law, which governs the substance of the instant contract dispute, "in absence of ambiguity, it is not within the function of the courts to look outside the instrument to arrive at the intention of the

parties." McCae Management Corp. v. Merchants Nat. Bank & Trust Co. of Indianapolis, 553 N.E.2d 884, 887 (Ind. App. 4th Dist. 1990). The Lease Agreement did not mention prepayment. The court therefore concludes that the Lease Agreement, as originally written by Wabash and plaintiff, did not contemplate prepayment,[3] but instead required specified monthly payments. See, e.g., Consolidated Bearings Co. v. Ehret-Krohn Corp., 913 F.2d 1224, 1233 (7th Cir. 1990) ("A contract is not ambiguous merely because it fails to address some contingency; the general presumption is that 'the rights of parties are limited to the terms expressed' in the contract.") (applying Illinois law) (Internal citations omitted; Emphasis added.); Dvorak v. Christ, 692 N.E.2d 920, 924 (Ind. App. 1998) (declining to "construe clear and unambiguous provisions [or] add provisions not agreed upon by the parties"); Piskorowski v. Shell Oil Co., 403 N.E.2d 838, 845 (Ind. App. 3d Dist. 1990) ("It is not the province of the courts to rewrite contracts for parties; rather, it is our duty to enforce the unambiguously stated intentions of the parties, absent assertions that the formation of the contract was somehow defective."). Cf. Indiana Glass Co. v. Indiana Michigan Power Co., 692 N.E.2d 886, 887 n.1 (Ind. App. 1998) ("There is no merit to [defendant's] claim that the contract's silence as to the recovery of attorney's fees by either party in the event of a breach creates an ambiguity in the contract to be construed in its favor. We find silence to be the simplest way to draft a contract to indicate that no such fees are contemplated by the parties.").

---

[3] Had the Lease Agreement provided for prepayment, but neglected to specify the terms thereof, then perhaps the parties' subsequent course of performance - specifically, the terms on which prepayment was permitted - would be relevant to the court's interpretation of the original Lease Agreement as written. In the absence of such an ambiguity, however, the court is constrained by the four corners of the Lease Agreement. See McCae Management Corp. at 887.

The cases cited by plaintiff regarding a court's ability to consider the parties' course of performance in construing a contract do not compel a different result. In R.T. Hepworth Co. v. Dependable Insurance Co., Inc., 997 F.2d 315, 318 (7th Cir. 1993), the Seventh Circuit considered extrinsic evidence to construe a contract, but only after noting that it was applying Illinois law, which has "largely rejected" the "four corners rule" of contract construction. Moreover, the R.T. Hepworth court noted that "extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." Id., quoting Bidlack v. Wheelabrator Corp., 993 F.2d 603, 608 (7th Cir. 1993).

DeHaan v. DeHaan, 572 N.E.2d 1315 (Ind. App. 1st Dist. 1991), is similarly distinguishable. In DeHaan, the appellate court noted that "the trial court reasonably could have considered the agreement's intent to be ambiguous so that extrinsic, parol evidence of the parties' intent was necessary to interpret the agreement." Id. at 1323. Thus, neither case cited by plaintiff supports the proposition that, under Indiana law, the court can consider extrinsic evidence in the absence of ambiguity.

As the Seventh Circuit noted in Bidlack v. Wheelabrator Corp., 993 F.2d 603, 608 (7th Cir. 1993):

> Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense ..., there must be either contractual language on which to hang the label of ambiguous or some yawning void ... that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them. [Internal citations omitted.]

Because the Lease Agreement does not contain either ambiguous contractual language or a yawning void calling out for an implied term in the instant case, the court concludes that it may

not consider plaintiff's extrinsic evidence in construing the terms of the Lease Agreement as written. Because the Lease Agreement requires specific monthly payments, Wabash's subsequent acceptance of plaintiff's prepayment, as well as the terms thereof, thus constitutes a modification[4] to the Lease Agreement as written, not merely an interpretation of an ambiguity therein.

Even if the court concluded otherwise, and permitted consideration of plaintiff's extrinsic evidence in construing the Lease Agreement, such extrinsic evidence would "supplement" the Lease Agreement as written. Indeed, both parties refer to the official comments to §1-205 of the UCC, which provides: "The measure and background for interpretation are set by the commercial context, which may <u>explain and supplement</u> even the language of a formal or final writing." (Emphasis added.) Thus, at the very least, the parties' course of performance was a supplement to the Lease Agreement as written, which did not reference a right of prepayment.

Plaintiff, by signing an Acknowledgment that there have been "no modifications, amendments or supplements" to the Lease Agreement, in "recognition of [defendant's] reliance upon the terms" of the Acknowledgment, effectively represented to defendant that the Agreement (in its original form - not as subsequently modified or supplemented to permit prepayment without penalty) was intact. In reliance on this representation, as contemplated by the Acknowledgment, defendant assumed the leases at issue in the instant dispute. Plaintiff cannot

---

[4]The court will assume strictly arguendo that the presumed modification or supplement complied with Section 24 of the Lease Agreement, which provides that the terms of the Agreement "may not be changed or terminated orally, but only by agreement in writing." Indeed, defendant admits in its response to plaintiff's Local R. 56.1 Statement of Uncontested Facts that plaintiff sought and received "pay-off letter[s]" from Wabash regarding its pre-term acquisition of trailers.

9

now demand prepayment without a premium on the basis of a modification or supplement that it has disclaimed.

That defendant could have been more diligent in researching plaintiff's prepayment of other trailer schedules does not alter the court's conclusion, given plaintiff's unequivocal execution of, and representations in, the Acknowledgment. Lack of consideration does not change the result, either, since plaintiff was obligated to execute the Acknowledgment pursuant to Section 20 of the Lease Agreement, for which the parties thereto unquestionably received consideration. Moreover, in the absence of any evidence or allegations in the complaint to the contrary, the court concludes that plaintiff did not sign the Acknowledgment under duress or coercion, and that defendant did not act in bad faith in securing plaintiff's signature. The court thus concludes that the Acknowledgment is enforceable and that plaintiff cannot demand prepayment without paying a premium on the basis of its modification or supplement to the Lease Agreement.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) is granted.

**ENTER:** May 27, 2003

Robert W. Gettleman
United States District Judge

10